**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS AT KANSAS CITY**

| | | |
|---|---|---|
| CHRIS CONNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | **Trial by Jury Demanded** |
| | **)** | |
| SERVE:   Registered Agent: | ) | |
| The Corporation Company, Inc. | ) | |
| 112 SW 7th Street, Suite 3C | ) | |
| Topeka, KS 66603 | ) | |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

Comes Now the Plaintiff, Chris Conner, by and through his undersigned counsel, Daniel J. Cohen and Steven L. Groves of Groves Powers, LLC, and states as follows:

### I.  The Parties and Jurisdiction

1.　　Defendant BNSF Railway Company ("BNSF") is a railroad carrier within the meaning of 49 U.S.C. 20109 and 49 U.S.C. 21102.

2.　　Plaintiff Chris Conner ("Conner") is an employee within the meaning of 49 U.S.C. 20109.

3.　　By reason of the above and foregoing, BNSF and Conner are covered by the employee protection provisions of the Federal Rail Safety Act, 49 U.S.C. §20109, as amended by Section 1521 of the Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53 ("FRSA").

### II.  Jurisdiction and Venue

4.      At all times relevant hereto, Conner has been a citizen of the State of Kansas, and a resident of Shawnee, Kansas.

5.      Conner's rights and remedies against BNSF arise under the FRSA, and the Court has jurisdiction to hear this matter pursuant thereto.

6.      This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because the suit arises out of a federal question.

7.      Venue is proper in this action pursuant to the terms of 28 U.S.C. §1391 in that all or a substantial portion of the events made the basis of this action occurred in Kansas City, Kansas, and BNSF has regular and systematic contacts with Kansas City, Kansas.

### III.  Procedural History in the Department of Labor

8.      On June 30, 2020, the subject of this action was initiated through the filing of an administrative complaint with the Secretary of the United States Department of Labor ("the Secretary"), pursuant to 49 U.S.C. § 20109(c)(2).

9.      On September 28, 2020, the Secretary issued an order dismissing said administrative complaint. Plaintiff, through his counsel, did not receive this order until October 14, 2020.

10.     On or about October 28, 2020, Conner appealed said dismissal and requested de novo review before an administrative law judge ("ALJ") in the Department of Labor. Said appeal was assigned OALJ docket no. 2021-FRS-00003, and is scheduled for trial on December 7, 2021.

11.     The parties have taken some but not all depositions necessary to pretrial preparation in OALJ Case No. 2021-FRS-00003. No dispositive motions are pending in said proceeding.

12.     This action is now brought before this Court as an original action in accordance with 49 U.S.C. § 20109(d)(3), the criteria of the provision having been satisfied in that:

      a.      More than 210 days have passed since the filing of Conner's administrative complaint with the Secretary;

      b.      The fact that more than 210 days have passed since the filing of said administrative complaint is not the result of bad faith on the part of Conner; and

      c.      The Secretary has not issued a final decision.

## IV.  Relevant Facts

13.     At all relevant times mentioned herein, Conner was a conductor employed by BNSF in its Argentine Yard located in Kansas City, Kansas. Conner hired on with BNSF on or about March 14, 2005. BNSF is a Class One common carrier operating as an interstate railroad. At all times relevant hereto, Conner's employment with BNSF involved and/or substantially affected interstate commerce.

14.     On January 29, 2020, while engaged in humping operations at the hump crest in Respondent's Argentine Yard, Conner found a defect in the functioning of the audible-noise bell on the remote control locomotive ("RCL") involved in the aforesaid humping operations. Specifically, the defective bell violated 49 C.F.R. § 229.15. Conner reported said defect to BNSF's managerial personnel in good faith.

15.     Conner's report of said defect constituted "protected activity" within the meaning of the FRSA, and in particular § 20109(a)(1)(C) and (2) thereof, which makes it

unlawful for a railroad employer to take "adverse action" in response to an "employee's lawful, good faith act done … to provide information … regarding any conduct which the employee reasonably believes constitutes a violation of any Federal … regulation relating to railroad safety…, if the information … is provided to … a person with supervisory authority over the employee … [or] to refuse to violate or assist in the violation of any Federal … regulation relating to railroad safety[,]" and under § 20109(b)(1)(A) thereof, which prohibits a railroad employer from taking adverse action against an employee for "reporting, in good faith, a hazardous safety … condition."

16.    In immediate response to Conner's protected activity, BNSF's aforesaid managerial personnel took the subject RCL out of service and swapped a different RCL to continue the humping operation, which delayed completion of the humping operation.

17.    Subsequently, however, BNSF took adverse action against Conner as follows:

   a.    BNSF's aforesaid managers falsely and maliciously fabricated an alleged statement by Complainant on the aforesaid date, and prior to his reporting of the aforesaid defect, in which Complainant supposedly threatened to "bad order" the RCL if said managers did not deliver pizzas to the hump crest;

   b.    BNSF's managers falsely and maliciously accused Conner of having fabricated the existence of the aforesaid defect;

   c.    BNSF issued a notice of investigation to Conner on February 6, 2020, fabricating disciplinary charges against him for "quarrelsome and discourteous conduct, malicious rules violation and intentional delay of trains" on January 29, 2020, in alleged violation of GCOR 1.6 (Conduct) and 1.29 (Avoiding Delays);

   d.    BNSF held a disciplinary hearing on the aforesaid charges on February 14, 2020, February 24, 2020, and April 27, 2020;

e.    In said disciplinary hearing, BNSF's managers falsely and maliciously testified in support of the fabricated charges levied against Conner; and

f.    BNSF maliciously terminated Conner's employment on May 6, 2020 .

18.    The above-described acts of BNSF and its aforesaid managers constitute adverse action taken by BNSF in response to Conner's aforesaid protected activity, for one or both of the following reasons:

a.    Conner's aforesaid protected activity was the but-for cause of BNSF's above-described adverse action; and/or

b.    Conner's aforesaid protected activity was a contributory factor leading to BNSF's above-described adverse action, as reflected by, *inter alia*, (i) the temporal proximity between the protected activity and the adverse action, (ii) indications of pretext, (iii) disparate treatment, (iv) inconsistent application of BNSF's disciplinary policies, (v) BNSF's shifting explanations for its actions, (vi) antagonism and/or hostility toward Conner's protected activity, (vii) the falsity of BNSF's explanation for the adverse action taken, and (viii) a change in BNSF's attitude toward Conner after he engaged in said protected activity.

19.    BNSF's aforesaid adverse action taken in response to Conner's aforesaid protected activity violates 49 U.S.C. 20109(a)(1)(C) and (2).

20.    As of the filing of this Complaint, more than 210 days have passed since the initial filing of Conner's administrative complaint, and the Secretary has not issued a Final Decision.

### V. FRSA Allegations and Violations

21.    Conner's actions of reporting a defective bell sound on a remote controlled locomotive constituted "protected activity" within the meaning of the FRSA in that Conner's actions consisted of the following: reporting an FRA and regulatory violation, or a perceived FRA and regulatory violation, in good faith, thereby falling within the scope

of 49 U.S.C. 20109(a)(1)(C) and (2), which define protected activity to include providing "(1) information … regarding any conduct which the employee reasonably believes constitutes a violation of any Federal … regulation relating to railroad safety … if the information … is provided to …: (C) a person with supervisory authority over the employee or such other person who has the authority to investigate, discover, or terminate the misconduct; [or] (2) to refuse to violate or assist in the violation of any Federal … regulation relating to railroad safety[,]" and falling under § 20109(b)(1)(A), which prohibits a railroad employer from taking adverse action against an employee for "reporting, in good faith, a hazardous safety … condition."

22.     BNSF's disciplinary proceedings against Conner in response to such protected activity constituted "adverse action" within the meaning of the FRSA, and such adverse action was retaliatory.

23.     Conner's protected activity contributed, in whole or in part, to BNSF's adverse action, and BNSF's adverse action thus violated the FRSA.

## VI. Damages and Equitable Relief Sought

24.     As a direct and proximate result of BNSF's aforesaid FRSA violations, Conner has suffered damages including, but not limited to, the following: loss of earnings in the past; loss of future earning capacity in the future; emotional distress and mental anguish in the past and future; and damage to reputation.

25.     BNSF's aforesaid FRSA violations were willful, intentional, knowing and malicious, thus entitling Conner to punitive damages under 49 U.S.C. § 20109(e)(3) in the amount of $250,000.00.

26.     Conner further seeks equitable and/or injunctive relief as follows:

    a.      An Order that all disciplinary charges against him be terminated and/or dismissed and that he be reinstated with all rights unimpaired.

    b.      An Order the BNSF purge and/or expunge any and all disciplinary matters, formal and informal, affecting his employment record with BNSF after January 29, 2020.

    c.      An injunctive order prohibiting BNSF from taking further retaliatory adverse action against Complainant.

27.    Conner further seeks an award of attorney fees and litigation expenses.

WHEREFORE, Plaintiff Chris Conner prays for Judgment in his favor and against Defendant BNSF Railway Company, together with litigations expenses, taxable costs, post-Judgment interest, and attorneys' fees, and for such other and further relief to which he may be entitled under the facts and law.

PLAINTIFF DEMANDS TRIAL BY JURY.

**GROVES POWERS, LLC**

/s/  *Steven L. Groves*
Steven L. Groves #22874
Daniel J. Cohen (to be admitted *pro hac vice*)
505 N. 7th Street, Suite #2010
St. Louis, Missouri 63101
Phone: 314-696-2300
Fax: 314-696-2304
Email: sgroves@grovespowers.com
Email: dcohen@grovespowers.com